O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES, for the use and benefit of DRILL TECH DRILLING & SHORING, INC., a California corporation; and DRILL TECH DRILLING & SHORING, INC., a California corporation, | ) ) ) ) ) ) ) ) | Case No. SACV 14-01573 DDP (ANx)  **ORDER GRANTING  DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SIXTH CLAIM FOR RELIEF** |
| Plaintiff, | ) ) | |
| v. | ) ) | [Dkt. 16] |
| LEXON INSURANCE COMPANY, a Texas corporation; INNOVATIVE CONSTRUCTION SOLUTIONS, a California corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Presently before the court is Defendant Innovative Construction Solutions' Motion to Dismiss Plaintiff's sixth claim for relief.  Having considered the submissions of the parties, the court grants the motion and adopts the following order.

**I.    Background**

Plaintiff Drill Tech Drilling & Shoring, Inc. ("Drill Tech") is a construction company that provides services in geotechnical

construction.  Defendant Innovative Construction Solutions ("ICS") is also a construction company that provides general contracting services.

As alleged in the complaint, the United States Air Force hired nonparty Toltest, Inc. as the primary contractor for a construction project known as the "Southeast Slope Stabilization" project in San Pedro, California.  (Complaint ¶¶ 9, 12).  TolTest then subcontracted a portion of the project to Defendant ICS.  (Id. ¶ 9).  In February 2013, 2013 Plaintiff Drill Tech entered into a subcontracting agreement with ICS to furnish and install soil nails, shotcrete, and architectural shotcrete, and perform other work, for $1,940,445.90 plus additional sums for certain overbreak work. (Id. at ¶ 12, Ex. 2 at 12.)

Plaintiff alleges the contract was subsequently modified due to multiple change orders, and the price of the work to be performed increased to $2,014,589.56. (Id. at ¶ 12.)  Plaintiff alleges that it has fully and completely performed all of its obligations the contract. (Id. at 14.) Plaintiff claims, of the total contract price for the work furnished, ICS only paid $1,538,694.74, leaving a balance due of $475,894.82. (Id. at ¶ 16.)

Plaintiff's Complaint alleges a claim against ICS under the Prompt Payment Act.  ICS now moves to dismiss Plaintiff's sixth claim for relief.

**II.  Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint

need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id.</u> at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. <u>Id.</u> at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." <u>Id.</u> at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." <u>Twombly</u>, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

## III. Discussion

ICS argues that Plaintiff's sixth claim for relief against ICS fails as a matter of law because no express or implied private right of action exists under the Prompt Payment Act. The court agrees.

"The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." <u>Cannon v. Univ. of Chicago</u>, 441 U.S. 667, 688 (1979). "Instead, the statute must either explicitly create a right of action or implicitly contain one." <u>In re Digimarc Corp. Derivative Litig.</u>, 549 F.3d 1223,1230 (9th Cir. 2008). A statute explicitly creates a private right of action when the statute contains language that defines a cause of action. <u>Id</u> Where a federal statute does not explicitly create a private right

of action, a plaintiff can maintain a suit only if Congress intended to provide the Plaintiff with an implied private right of action.  <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 568 (1978).  In the absence of clear evidence of congressional intent, the Court may not usurp the legislative power by unilaterally creating a cause of action. <u>Digimarc</u>, 549 F.3d at 1231.

In 1982, Congress enacted the Prompt Payment Act "to provide incentives for the Federal Government to pay its bills on time." <u>Sarang Corp. v. United States</u>, 76 Fed. Cl. 560, 569 (Fed. Cl. 2007) (citation omitted).  In furtherance of that goal, the Prompt Payment Act provides that "the head of <u>an agency</u> acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due." 31 U.S.C. § 3902(a) (emphasis added).  Drill Tech does not appear to dispute that this language does not expressly confer a private right of action upon subcontractors.

In 1988, the Prompt Payment Act was amended to include provisions applicable to subcontractors.  For example, 31 U.S.C. § 3905(b) states that contracts awarded by a government agency must require prime contractors to include certain payment and penalty clauses in all subcontracts, while 31 U.S.C. § 3905(c) includes similar language regarding contracts between subcontractors.  Plaintiff here relies largely on 31 U.S.C. § 3905(j), which states that the Prompt Payment Act does "not limit or impair any contractual, administrative, or judicial remedies otherwise available to a contractor or a subcontractor in the event of a dispute involving late payment or nonpayment by a prime contractor or deficient subcontract performance or nonperformance by a subcontractor." 31 U.S.C. § 3905(j).  The 1988 amendments did not expressly provide a private cause of action to subcontractors or sub-tier subcontractors.

4

1    Apparently arguing that Section 3905 implicitly creates a
2  private cause of action, Plaintiff contends that the legislative
3  history refers to a subcontractor's "entitlement" to payments under
4  the terms of a contract and the availability of pre-existing
5  remedies, and that Drill Tech's right to sue "as part of a breach
6  of contract claim should not be in doubt."  (Opp. at 6.)
7  "Congressional intent can be implied by the text or structure of
8  the statute, or by a review of the statute's legislative history."
9  Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240,
10 1246 (10th Cir.2001).  The thrust of plaintiff's legislative
11 history argument, which is not supported by specific citations to
12 the legislative record, is unclear.  ICS has not disputed that
13 Drill Tech may have some other remedy apart from the Prompt Payment
14 Act.  Furthermore, review of the legislative history reveals that
15 the "bill was specifically designed to encourage federal government
16 managers to improve their bill paying procedures by authorizing the
17 charging of a penalty against program operating budges when federal
18 agencies fail to pay their bills on time." H.R. Rep. 97-461, 1982
19 U.S.C.C.A.N. 111, 112 (emphasis added). When Congress amended the
20 statue, it provided it did so "in an effort to close loopholes that
21 have existed in the law, clarify its language and send a clear
22 message to Federal Government agencies to improve their
   implementation of the Prompt Payment Act." H.R. Rep. 100-784, 27,
   1988, U.S.C.C.A.N. 3036,3037. (Emphasis added).  The weight of
   legislative history does not, therefore, support Drill Tech's
   position.
23    Drill Tech then argues that the plain meaning of the Prompt
24 Payment Act supports Drill Tech's "Claim for Relief for Payment of
25 Prompt Payment Penalties."  It is unclear to the court whether
26 Drill Tech contends that Section 3905 explicitly creates a private
27 cause of action.  Such a position would have no merit.  To the
28 extent Plaintiff asserts that a private right of action exists
   because (1) federal courts have jurisdiction over federal questions

and (2) Section 3905 does not limit <u>pre-existing</u> rights to collect interest penalties provided for by contracts, the court is not persuaded by Plaintiff's undeveloped arguments that Section 2905 created a new, Prompt Payment Act cause of action.

Finally, every other district court to consider this issue appears to have concluded that the Prompt Payment Act does not confer a private right of action upon subcontractors. <u>See</u>, <u>e.g.</u> <u>W & W Steel, LLC v. BSC Steel, Inc.</u>, 944 F.Supp.2d 1066, 1081 (D. Kan. 2013). <u>United States ex rel. IES Commercial, Inc. v. Cont'l Ins. Co., Inc.</u>, 814 F.Supp.2d 1, 3 (D. D.C. 2011); <u>United States ex rel. King Mountain Gravel, LLC v. RB Constructors, LLC</u>, 556 F.Supp.3d 1250, 1253 (D. Colo. 2008); <u>United States ex rel. Virginia Beach Mech. Servs., Inc. v. SAMCO Constr. Co.</u>, 39 F.Supp 2d 661, 677 (E.D. Va. 1999); <u>United States ex rel. CKF Excavating, LLC v. ACC Constr., Inc.</u>, No. 11-CV-42, 2012 WL 3161294 at *6 (W.D. Ky. Aug. 3, 2012). This court sees no reason to deviate from this weight of authority.

**IV. Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED. Plaintiff's Sixth Cause of Action against ICS is dismissed. Plaintiff is granted leave to amend non-Prompt Payment Act, breach of contract claims. Any amended complaint shall be filed within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: June 3, 2015

DEAN D. PREGERSON
United States District Judge